876 A.2d 79

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Barbara Osborn KREAMER.

Misc. Docket AG No. 24 Sept. Term, 2004.

Court of Appeals of Maryland.

June 21, 2005.

504

506

 

Gail D. Kessler, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for the Atty. Grievance Com'n of MD), for Petitioner.

Thomas G. Bodie, Nagle, Dolina, Smith & Hobbs, P.A., Towson, for Respondent.

Argued before: BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against Barbara Osborn Kreamer (respondent). Bar Counsel charged Ms. Kreamer with violating several Maryland Rules of Professional Conduct, alleging that she failed to file a Complaint for Absolute Divorce for a client, as she had allegedly promised to do, and that she continually failed to respond to the client's phone calls and e-mails. Bar Counsel also alleged that Ms. Kreamer failed to provide the client's new attorney with the client's file in a timely manner and that she failed to respond to the Attorney Grievance Commission's letters requesting a written response to the client's complaint. Finally, Bar Counsel alleged that Ms. Kreamer took funds from the client's retainer that she had not yet earned.

The petition alleged that Ms. Kreamer violated Rule 1.1 (Competence),[1] Rule 1.3 (Diligence),[2] Rule 1.4 (Communication),[3] Rule 1.15 (Safekeeping Property),[4] Rule 1.16 (Declining

---

1. Rule 1.1 provides:

 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

2. Rule 1.3 provides:

 A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 1.4 provides:

 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. Rule 1.15 provides:

or Terminating Representation),[5] Rule 8.1 (Bar Admission and

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b)Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

5. Rule 1.16 provides:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

(3) the lawyer is discharged.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2) the client has used the lawyer's services to perpetrate a crime or fraud;

(3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

Disciplinary Matters),[6] and Rule 8.4 (Misconduct).[7] Bar Counsel also alleged that Ms. Kreamer violated Rule 16–609 (Prohibited Transactions)[8] and Md.Code (1989, 2004 Repl.Vol.),

(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

6. Rule 8.1 provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement or material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

7. Rule 8.4 provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law. (Amended Dec. 10, 1996, effective July 1, 1997.)

8. Rule 16–609 provides:

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

§ 10–306 of the Business Occupations and Professions Article (Misuse of Trust Money).[9]

Pursuant to Maryland Rule 16–752, we referred the matter to Judge Susan Souder of the Circuit Court for Baltimore County to make findings of fact and conclusions of law. Following an evidentiary hearing on December 21, 2004, Judge Souder found that Ms. Kreamer violated MRPC Rules 1.3, 1.4, 1.16, 8.1, 1.15, Md. Rule 16–609, and § 10–306 of the Business and Occupations Article of the Maryland Code. Respondent and petitioner filed exceptions.

## I. *Hearing Judge's Opinion*

Judge Souder made the following factual findings:

"On February 25, 2002, Benchamas D. Sporay ('Client') met with Respondent to obtain legal advice regarding her separation from her husband, which occurred on January 16, 2002. The Client signed a Retainer/Engagement Agreement ('Agreement') on March 8, 2002. In the Agreement, the Client agreed to have Respondent represent the Client and perform all necessary legal services in connection with representation in the matter of marital separation and divorce. Furthermore, the Client was to pay Respondent a retainer of two thousand dollars ($2,000.00), which included a two hundred seventy dollar ($270.00) non-refundable engagement fee.[1] The Client agreed to pay Respondent at an hourly rate of one hundred thirty five dollars ($135.00).

---

1. "The Client vacated the marital home without taking any of her belongings.

"The Client submitted four checks to Respondent for payment of her representation. On March 8, 2002, the Client paid two thousand dollars ($2,000.00). On March 15, 2002, the Client paid ten dollars ($10.00). Additionally, the

---

9. Section 10–306 of the Business Occupations and Professions Article provides:

 A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

Client paid five hundred dollars ($500.00) on April 17, 2002. Finally, on May 5, 2002, the Client paid two thousand dollars ($2,000.00). Altogether, the client paid $4,510.

"The Client's husband filed a Complaint for Limited Divorce and Other Relief in the Circuit Court for Harford County on March 13, 2002. On April 12, 2002, the Client, through Respondent, filed an Answer and Counter–Complaint for Absolute Divorce.[2] Respondent represented the Client at a protective order hearing in March 2002, in which the Client sought protection from her husband, and to retrieve her belongings from the marital home. An *ex parte* Order was granted; and a Consent Order was entered in April. A provision of the Consent Order was that the Client's husband was not to contact her.

---

2. "The Counter–Complaint for Absolute Divorce failed to allege a ground upon which an absolute divorce can be granted. Nor was a Financial Statement submitted with the Answer and Counter–Complaint as required by the Md. Rules.

"In May 2002, the Client met with Respondent to discuss how the case would proceed. The Client wrote out her reasons for seeking the divorce, and the Respondent wrote her own notes in the margins of the Client's notes. The Respondent misplaced these notes until the investigation of these charges was underway and never divulged that they were lost to the Client.

"After the May 2002 meeting, other than responding to discovery propounded by the Client's husband, no action took place in the Client's divorce matter until January 2003. In January 2003, the Client met with the Respondent and indicated that she wanted to proceed with the divorce action, as it had been twelve months since she had separated from her husband. Respondent told the Client that she would file for an absolute divorce based on a mutual and voluntary separation on her behalf.

"The Client e-mailed Respondent on March 28, 2003 and May 14, 2003 seeking an update on the status of her divorce case. Respondent did not respond to either e-mail. On June 23, 2003, the Client telephoned Respondent seeking an

up-date on her case. Respondent failed to return the Client's phone call. On July 1, 2003 the Client again [called] Respondent seeking an update of her case, and stated that she was disappointed with Respondent for her procrastination and for ignoring the Client. Respondent called the Client on July 3, 2003 and promised that she would give an update by July 7, 2003. The Respondent failed to respond by July 7, 2003 as promised.

"Respondent's failures regarding communication with the Client continued from July 9, 2003 through August 11, 2003. During that time the Client telephoned Respondent at least eight times. Of those eight telephone contacts the Client left four messages. Respondent failed to respond to any of the messages. Furthermore, on several occasions Respondent indicated to the Client that she was busy with another client and that she would get back to the Client. Respondent failed to do so. Additionally, on one occasion, Respondent answered the call but indicated that she was on her way to court and would have to get back to the Client. Again, Respondent failed to do so. Subsequently, on August 11, 2003 the Client filed a complaint against Respondent with the Attorney Grievance Commission of Maryland ('Petitioner').

"Respondent testified that from January 17, 2003 through July 29, 2003 she was planning a settlement demand to be submitted to opposing counsel on behalf of the Client.[3] There is no physical evidence of Respondent's progress on the case other than her initial responses to opposing counsel's discovery requests. Furthermore, Respondent never propounded discovery requests to the opposing party. There was no activity concerning the Client's file by Respondent in 2003. To the extent Respondent was 'planning,' it was apparently a cerebral exercise undertaken without the benefit of information concerning the opposing party's current financial information.

---

3. "To explain her failure to move the case, Respondent asserts that the Client preferred to settle rather than litigate. In that regard, however, the Client was not unlike most clients.

"Indeed, Respondent never determined whether the opposing party was available for the purpose of settlement discussions. At the January 2003 meeting, the Client advised Respondent that her husband, a member of the military reserves, 'may be called up.' Whether Client's husband's unit had been activated or would be activated in the future is irrelevant. Respondent made no effort to determine the Client's husband's status. She did not inquire of husband's counsel; she filed no discovery requests in the pending litigation; nor did she ever request an absolute divorce on behalf of the client based on a mutual and voluntary separation. Respondent admits that she was unaware of Client's husband's status.

"Respondent's counsel argues that Respondent believed Client's husband was in active military service overseas, and unavailable for the case to proceed. If that were true, Respondent's failure to advise her client that the case could not proceed while her husband was on active duty overseas is inexplicable.

"On September 3, 2003 the Client retained Christopher R. Van Roden, Esq. ('Van Roden') to represent her in her divorce proceedings. Van Roden sent a letter dated September 5, 2003 to the Respondent advising that he had been retained to represent the Client and asking the Respondent to turn over to the Client her case file. Van Roden also asked Respondent for a detailed itemization of all work Respondent performed for the Client since she was retained, and a refund of any unused portion of Client's retainer. On September 22, 2003 the Respondent filed a Motion to Strike Appearance. However, the Respondent failed to turn over the Client's file to Van Roden until February 13, 2004, the date of the Respondent's Attorney Grievance Commission's Peer Review Meeting. No explanation for the failure to respond promptly to Van Roden was proffered. Respondent's counsel suggested that Van Roden would have reviewed the Court's file in any case, and, therefore there was no prejudice to the Client by Respondent's failure to respond to Van Roden. No preju-

dice to the Client's case as a result of Respondent's delay was shown; Client did have to pay new counsel to review the Court file.

"The Respondent failed to properly maintain her finances with respect to the Client's case. On March 15, 2002, the Respondent took $99.50 more than that to which she was entitled from the Client's retainer when she wrote Check 1329 to herself in the amount of $257.00. Additionally, Respondent took $47.19 from the Client's retainer when she wrote Check 1364 in the amount of $1,550.00 on June 11, 2002 to herself.

"Respondent admits that her records showed a $47.19 credit due to Client. All funds due to the Client were eventually paid to the Client, and there is no claim Respondent owes the Client money.

"Respondent explained her failures as resulting from a campaign for elective office in the Fall of 2002, her decertification by the Client Security Trust Fund for a time, time spent correcting the foregoing problem, and the need to train a new secretary who required constant instruction. These excuses did not constitute valid defenses.

"Petitioner mailed letters to Respondent on three occasions [4] requesting a written response to the complaint filed with Petitioner's office on August 11, 2003. On all three occasions Respondent failed to submit a response to Petitioner's request. Furthermore, Respondent did not file an Answer to the Petition for Disciplinary or Remedial Action until October 12, 2004. The untimely Answer was only accepted as Petitioner did not object to the Court vacating its prior Order of Default against Respondent. Eventually, Respondent met with Petitioner's Investigator concerning the matter on November 17, 2003.

---

4. "Petitioner's letters to Respondent were dated August 28, 2003, September 8, 2003, and October 15, 2003.

"The Honorable William O. Carr, Administrative Judge for the Circuit Court of Harford County, testified that he had known Respondent since elementary school. In the six

months prior to the hearing, in his opinion, Respondent had evolved into a "good problem solver." Prior to that time he observed that she had difficulty in focusing on the issues and could be "problematic."

"Reverend Clyde Allen Spicer testified to Respondent's good character."

Judge Souder made the following conclusions of law.

"Petitioner alleges that Respondent violated the following Maryland Rules of Professional Conduct: 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.15 (Safekeeping property), 1.16 (Declining or terminating representation), 8.1 (Bar Admission and Disciplinary Matters), and 8.4 (Misconduct). Additionally, Petitioner alleges that Respondent violated Maryland Rule 6–609 (Prohibited transactions) and Md.Code Ann., Business Occupations and Professions, § 10–306 (Misuse of trust money).

"Respondent was not diligent in her representation of Client in violation of Rule 1.3. Respondent took no action to file an absolute divorce on behalf of Client based on a mutual and voluntary separation when requested to do so in January 2003. At no time in 2002/2003 did Respondent propound discovery that might have assisted her in preparing (as opposed to 'planning') a settlement demand. Nor did Respondent engage in any settlement discussions with opposing counsel.

"Respondent failed to respond meaningfully to numerous communications from Client in violation of Rule 1.4. Respondent failed to provide the file or otherwise communicate with Client's successor counsel, Mr. Van Roden, for many months in violation of Rule 1.16.

"Bar Counsel states that the failure to communicate and the lack of diligence demonstrate that Respondent is not a competent attorney as required by Rule 1.1. This Court did not find persuasive Bar Counsel's argument in this case that violations of Rules 1.3 and 1.4 automatically constitute a violation of Rule 1.1.

"Respondent violated Rule 8.1 by failing to respond to Petitioner's requests seeking a response to the Client's complaint. Respondent's defense that she became paralyzed with fear when she received such requests from Bar Counsel and is unable to act is unacceptable. Respondent's assertion that illness prevented her from timely responding to the Petition herein was also unpersuasive in light of the fact that she worked on other Client matters and appeared in Court during the illness. Respondent's apology for her failure to respond in the instant case was accepted.

"While Respondent's sloppy bookkeeping practices resulted in violations of the law—1.15, 16–609 and 10–306, these were merely technical violations, not in large amounts, that more organized financial record keeping would obviate. Petitioner's argument that the aforesaid accounting violations also constitute a violation of Rule 8.4 was unpersuasive in this case."

## II. *Standard of Review*

As stated in *Attorney Griev. Comm'n v. Davis*, 375 Md. 131, 825 A.2d 430 (2003),

[t]his Court exercises original jurisdiction over attorney discipline proceedings. We conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. We will not disturb the factual findings of the hearing judge if they are based on clear and convincing evidence. Our review of the hearing judge's conclusions of law is *de novo*.

*Davis*, 375 Md. at 157–58, 825 A.2d at 445–46 (citations omitted). Moreover, Md. Rule 16–757(b) states:

The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

### III. *Exceptions*

■ Ms. Kreamer filed ten exceptions to Judge Souder's factual findings and conclusions of law. In particular, Ms. Kreamer excepted to the finding that "the Counter–Complaint for Absolute Divorce failed to allege a ground upon which an absolute divorce can be granted," noting that the Answer and Counterclaim that she filed alleged facts that would constitute a ground for divorce under § 7–103(a)(7) and (8) of the Family Law Article.[10] The Answer and Counterclaim included the statement that Ms. Sporay,

> avers that she left the home to regain her health and wellbeing after being subjected to verbal and emotional abuse over the course of the marriage, being subjected to extremely violent acts against her by the Plaintiff on numerous occasions, being subjected to intimidation by guns, swords and other weapons being displayed in every room of the house, demoralized by bullet holes remaining in the ceiling for over a year from the Plaintiff/Counter–Defendant's having discharged his firearms ... he was driving the automobile in which she was a passenger in a dangerous manner so that her head was forced into the dashboard ... there is no reasonable hope or expectation of reconciliation between the parties.

That paragraph was incorporated by reference into the section of the pleading entitled "Counterclaim for Absolute Divorce and Other Relief."

------

**10.** Sections 7–103(a)(7) and (8) states:

> The court may decree an absolute divorce on the following grounds: ... (7) cruelty of treatment toward the complaining party or a minor child of the complaining party, if there is no reasonable expectation of reconciliation; or (8) excessively vicious conduct toward the complaining party or a minor child of the complaining party, if there is no reasonable expectation of reconciliation.

Md.Code (1999, 2004 Repl.Vol.), § 7–103(a)(7) & (8) of the Family Law Article. The legislature made cruelty and excessively vicious conduct grounds for absolute divorce in 1998. *See* Md.Code (1984, 1999 Repl. Vol.), § 7–103(a)(7) & (8) of the Family Law Article. Prior to 1998, cruelty of treatment and excessively vicious conduct were grounds for limited divorce. *See* Md.Code (1984, 1991 Repl.Vol.), § 7–102(a)(1) & (2) of the Family Law Article.

■ We disagree with the hearing judge's finding that Ms. Kreamer failed to allege a ground upon which an absolute divorce can be granted. The fact that the pleading did not contain the phrase "cruelty of treatment" or "excessively vicious conduct" does not change the import of the counterclaim. The pleading certainly alleged facts that, if proven, would have supported the grant of an absolute divorce on the grounds of cruelty of treatment.[11] As stated in Md. Rule 2–303(b), "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense...." Ms. Kreamer's first exception is sustained.

■ Ms. Kreamer next contends that the hearing judge wrongly found that "[i]n January 2003 ... Respondent told the Client that she would file for an absolute divorce based on a mutual and voluntary separation on her behalf." Ms. Kreamer argues that she could not have filed for a divorce on those grounds because she knew that there never was a mutual and voluntary separation agreement reached between her client and the client's husband.[12] Upon review of the testimony before the court, it is clear (and the Petitioner admits) that Ms. Sporay did not actually state that she had asked Ms. Kreamer to file for an absolute divorce based on a mutual and voluntary separation. Ms. Sporay testified that

---

11. As stated in *Scheinin v. Scheinin*, 200 Md. 282, 89 A.2d 609 (1952), cruelty as a cause for divorce includes any conduct on the part of the husband or wife which is calculated to seriously impair the health or permanently destroy the happiness of the other. Thus any misconduct of a husband that endangers, or creates a reasonable apprehension that it will endanger, the wife's safety or health to a degree rendering it physically or mentally impracticable for her to properly discharge the marital duties constitutes cruelty within the meaning of the divorce statute.

*Scheinin*, 200 Md. at 289–90, 89 A.2d at 612. Being subjected to "extremely violent acts" and "intimidation by guns, swords, and other weapons" qualifies as cruelty of treatment.

12. In fact, Ms. Sporay testified at the hearing before Judge Souder that she left the marital home in January of 2002 because she felt unsafe and because her husband had physically threatened her.

she had a conversation with Ms. Kreamer on January 16 or 17, 2003, and that she "told her that my separation have come to meet the deadline [sic], 12–month separation. Um, I would like her to go forward with my divorce process." Ms. Sporay also testified that Ms. Kreamer told her that she would "work on it," and that she would file for absolute divorce. No one testified that Ms. Kreamer said that she would file for an absolute divorce *based on a mutual and voluntary separation.* In fact, as has already been discussed, Ms. Kreamer had already filed for an Absolute Divorce on other grounds in March, 2002, when she filed the Answer to Complaint for Limited Divorce and Other Relief and Counterclaim for Absolute Divorce.

Ms. Kreamer's second exception is overruled in part and sustained in part. Insofar as the hearing judge found that Ms. Kreamer promised to file for an absolute divorce, Ms. Kreamer's second exception is overruled. The hearing judge was free to believe Ms. Sporay's testimony that Ms. Kreamer promised to file for an absolute divorce after the meeting with the client in January 2003.[13] As to the ground for divorce, however, Ms. Kreamer's exception is sustained. There is no evidence in the record that Ms. Kreamer said she would file *on the ground of mutual and voluntary separation.* It appears from the hearing judge's factual findings that the purpose for mentioning the failure to file was to showcase Ms. Kreamer's continued failure to communicate with Ms. Sporay about the status of her divorce and the failure to do *something* to move the divorce forward. The particular ground for divorce has nothing to do with those failures. Thus, in our view, the hearing judge's error is insignificant.

█ Ms. Kreamer's third exception is to the hearing judge's finding that "Respondent's failures regarding communication

---

13. We recognize that Ms. Kreamer had already filed for absolute divorce on the grounds of cruelty of treatment and excessively vicious conduct when she filed the answer and counterclaim for divorce in April of 2002. Nonetheless, the complaint against Ms. Kreamer is for not moving the divorce case forward *after* January 2003, when the client asked her to complete the divorce.

with the Client continue from July 9, 2003 through August 11, 2003." Ms. Sporay testified that Ms. Kreamer called her on July 29 and told her that she had been busy with another case and "didn't have time for my case that much, but she will try to work on it. Get a copy mailed to my attention by the following week." Ms. Kreamer testified that the conversation on July 29 was "a substantive conversation that was for the purpose of moving the case forward."

■ In addition, Bar Counsel submitted Ms. Kreamer's notes from that conversation, as Plaintiff's Exhibit 7. The notes appear to reflect a substantive conversation, making mention of the credit and debt situation of the parties, alimony, and the husband's retirement account, among other things. Nonetheless, the hearing judge found that "Respondent's failures regarding communication with the Client continued from July 9, 2003 through August 11, 2003." Judge Souder also noted that "[d]uring that time the Client telephoned Respondent at least eight times. Of those eight telephone contacts the Client left four messages. Respondent failed to respond to any of the messages." In view of those facts, we cannot say that the hearing judge erred by finding that the communication failures continued during the time mentioned, even if one of the phone calls could be described as substantive. Moreover, Judge Souder was free to believe Ms. Sporay's testimony about the July 29 call (that it was not substantive) and to disbelieve Ms. Kreamer's notes and testimony. The chancellor is free to disregard evidence that she considers not credible. *Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 385, 773 A.2d 463, 468 (2001). Respondent's third exception is overruled.

■ Ms. Kreamer also excepts to the hearing judge's finding that "[t]here was no activity concerning the Client's file by Respondent in 2003" because "[i]t is undisputed that Respondent met with Sporay on January 17, 2003 and also that Respondent and Sporay had a conversation concerning Sporay's case on July 29, 2003." Respondent also argues that she "had records ... that were the result of discovery" during

that time, that there was "an e-mail exchange on May 14, 2003," and "several non-substantive telephone contacts in early July 2003," and that she "was planning the elements of a settlement demand which included the items that were narrated on the notes of July 29."

First, it was not error for Judge Souder to refuse to consider the e-mails and several phone contacts as "activity" on the client's case.[14] Those non-substantive contacts did nothing to propel Ms. Sporay's divorce forward. Second, the fact that Ms. Kreamer "had records . . . that were the result of discovery" during the time in question does nothing to prove that she did anything with that discovery during that time or that she attempted to obtain any new discovery during that time. In fact, Ms. Kreamer testified that she did not file or propound interrogatories or request for production of documents between January and July of 2003. She also testified that the most recent financial information that she had was from March of 2002. Third, Judge Souder was free to disbelieve (and apparently did disbelieve) Ms. Kreamer's testimony that she was planning a settlement demand from January through July of 2003. She specifically found that,

> [t]here is no physical evidence of Respondent's progress on the case other than her initial responses to opposing counsel's discovery requests. Furthermore, Respondent never propounded discovery requests to the opposing party. There was no activity concerning the Client's file by Respondent in 2003. To the extent Respondent was "planning," it was apparently a cerebral exercise undertaken

14. As noted by Judge Souder:

The Client e-mailed Respondent on March 28, 2003 and May 14, 2003 seeking an update on the status of her divorce case. Respondent did not respond to either e-mail. On June 23, 2003, the Client telephoned Respondent seeking an update on her case. Respondent failed to return the Client's phone call. On July 1, 2003 the Client again [called] Respondent seeking an update of her case, and stated that she was disappointed with Respondent for her procrastination and for ignoring the Client. Respondent called the Client on July 3, 2003 and promised that she would give an update by July 7, 2003. The Respondent failed to respond by July 7, 2003 as promised.

without the benefit of information concerning the opposing party's current financial information.

Ms. Kreamer admitted that she did not present a settlement demand after January 17, 2003. Fourth, and finally, even though everyone agrees that Ms. Kreamer and Ms. Sporay had a meeting in January of 2003, we cannot say it was clearly erroneous for the hearing judge to find that no activity had taken place on Ms. Sporay's file in 2003, especially in view of Ms. Sporay's testimony that the meeting in January consisted solely of Ms. Sporay telling Ms. Kreamer that she wanted her case to be moved forward and Ms. Kreamer saying that she would work on the case. *Saying* that she would work on the case is different than actually working on the case. While the meeting may qualify technically as "activity" in the case, it is clear from Judge Souder's discussion that the kind of activity needed to move the case forward was completely lacking between January 2003 and the end of Ms. Kreamer's representation of Ms. Sporay. We think that is the kind of inactivity that was considered. Ms. Kreamer's fourth exception is overruled.

 Ms. Kreamer next excepts to the finding that,

[a]t the January 2003 meeting, the Client advised Respondent that her husband, a member of the military reserves, "may be called up," Whether Client's husband's unit had been activated or would be activated in the future is irrelevant. Respondent made no effort to determine the Client's husband's status.... Respondent admits that she was unaware of Client's husband's status.

Ms. Kreamer points to Ms. Sporay's testimony and notes that, while discussing defendant's Exhibit 4 (an e-mail dated March 18, 2002 from Ms. Sporay to Ms. Kreamer in which Ms. Sporay wrote "[Mr. Sporay] was on active duty in Kosovo from 02/01—08/01 ..."), Ms. Sporay agreed that at the time she first saw Ms. Kreamer her husband was still in the active reserve. Ms. Kreamer also relies on Plaintiff's Exhibit 3 (her notes of the January 17, 2003 meeting), in which she wrote, "he may be called up."

The fact that Ms. Kreamer knew that Ms. Sporay's husband was on active duty in 2001 and that he *may* be called up in 2003 does not mean that Ms. Kreamer was aware of Ms. Sporay's husband's *current* status, the only status that was relevant to the question of how to proceed with the divorce. In fact, Ms. Kreamer testified that she thought the husband may have been on active duty in January 2003, but that she did not know "for sure" if he was. She also admitted that she did not tell Ms. Sporay at the January meeting that they could not proceed with the divorce if her husband had been on active duty at the time.[15] In view of that testimony, we cannot say the finding on the matter was clearly erroneous. Ms. Kreamer's fifth exception is overruled.[16]

---

15. The colloquy on this matter is as follows:

Q. ... Was there any way that you could have, um, told her that you were proceeding with the case after January 17th, '03 knowing that ... the defendant in the counter-complaint was on active duty with the military?

A. No, I couldn't have told her that. And really the substance, what I would say to Mrs. Sporay, I would describe as palliative, to try to help her know that I was in her corner, you know, concerned about how this was going to come out. I knew that I could not move this case forward for her.

Q. Why didn't you tell her, look, we can't do anything in this case?

A. Well—

Q. You know he is on active duty, why didn't you tell her that?

A. I should have said something more definite about, we're at a standstill here. But she was very, very upset. ...

Just before that testimony, however, Ms. Kreamer testified that she was sure she would have had a discussion with Ms. Sporay about the effect of the husband being on active duty because that "is a big issue practicing law in Aberdeen" and that she would have informed the client that "she could not divorce him while he is on active duty." Apparently, the hearing judge believed Ms. Kreamer's statement that she did not tell her client about the problems with proceeding with the divorce if her husband was on active duty.

16. In support of this exception, Ms. Kreamer also notes that Ms. Sporay's new attorney, Mr. Van Roden, filed a complaint for absolute divorce on December 20, 2003, and that Mr. Sporay's attorney then filed a Motion to Stay Proceedings because Mr. Sporay was on active duty in Iraq at the time. Mr. Van Roden did not know when Mr. Sporay had gone on active duty. The fact that Mr. Sporay was on active duty at the time the new lawyer attempted to move the case forward does nothing to discredit the finding that Ms. Kreamer did not

 Ms. Kreamer also excepts to the finding that "Client did have to pay new counsel to review the Court file." [17] Ms. Kreamer admits and Mr. Van Roden testified that he reviewed the Court file and charged Ms. Sporay to do so. Pointing out that the new attorney "necessarily, in the exercise of prudence, would review the court file when taking over representation," does nothing to change the fact that Ms. Sporay would never have incurred the additional expense if Ms. Kreamer had properly represented her and moved her divorce forward. Ms. Kreamer's sixth exception is overruled.

 Ms. Kreamer next excepts to the finding that "[t]he Honorable William O. Carr, Administrative Judge for the Circuit Court of Harford County, testified that he had known Ms. Kreamer since elementary school. In the six months prior to the hearing, in his opinion, Respondent had evolved into a 'good problem solver.' " Ms. Kreamer argues that Judge Carr actually testified that he had "been quite impressed over [the past six months] by her ability to [be a problem solver] for her clients." While it is true that Judge Carr made this statement, he also stated that he had "seen Barbara evolve into what I think is a pretty good problem solver." Judge Souder was not required to repeat everything in Judge Carr's testimony, and the finding she made is supported by the testimony in the record. *See Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 385, 773 A.2d 463, 468 (2001) (noting that the "hearing court's duties are to consider all evidence properly submitted in the discipline

---

know what Mr. Sporay's status was and that she did nothing to determine it during her representation of Ms. Sporay. The hearing judge was free to disbelieve Ms. Kreamer's testimony that she knew that Mr. Sporay was on active duty and out of the country. She was also free to disbelieve Ms. Kreamer's testimony that she was sure she had informed Ms. Sporay that she could not have divorced her husband while he was on active duty.

17. The hearing judge made this finding after a discussion of Ms. Kreamer's failure to respond to Mr. Van Roden's requests for Ms. Sporay's file. Judge Souder noted that "[n]o prejudice to the Client's case as a result of Ms. Kreamer's delay was shown; Client did have to pay new counsel to review the Court file."

process. Absent indications that such evidence is not considered, we presume it was considered along with all the other evidence"). Ms. Kreamer's seventh exception is overruled.

■ Ms. Kreamer excepts to the conclusion that she was "not diligent in her representation of client in violation of Rule 1.3." As previously noted, Rule 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." While we disagree with the conclusion that Ms. Kreamer should have filed an absolute divorce "based on a mutual and voluntary separation when requested to do so," we agree with the rest of Judge Souder's assessment regarding the failure to do anything to move the case forward. From January 2003, when Ms. Sporay made her wishes known about moving forward with the divorce, through the end of her representation of Ms. Sporay, Ms. Kreamer propounded no discovery, made no settlement demands on opposing counsel, and repeatedly ignored Ms. Sporay's calls and e-mails. *See Attorney Griev. Comm'n v. Awuah*, 374 Md. 505, 522, 823 A.2d 651, 661 (2003) (holding that respondent violated Rule 1.3 because he did little work on a client's case and was not responsive to her requests about her case, among other things); *Attorney Griev. Comm'n v. Cohen*, 361 Md. 161, 174, 760 A.2d 706, 713 (2000) (holding that respondent violated Rule 1.3 because of repeated failure to return phone calls from client, among other things). Even if the January 2003 meeting and the July 2003 phone call were substantive (because Ms. Kreamer was gathering pertinent information from her own client), the record does not reflect that Ms. Kreamer did anything with that information during the relevant time period to obtain a divorce for her client.

■ Ms. Kreamer's argument that "[f]iling a supplemental complaint for absolute divorce in January 2003 would have been a waste of Respondent's time and Sporay's money if Mr. Sporay was on active duty . . .," is unavailing. It does not save Ms. Kreamer to argue, after the fact, that Mr. Sporay actually was on active duty at the time, which would have prevented even the most diligent attorney from obtaining

additional discovery or a divorce.[18] The hearing judge found that Ms. Kreamer was unaware of Mr. Sporay's active duty status during the relevant time period. Further, the hearing judge did not believe that Ms. Kreamer informed Ms. Sporay that they could not move forward while Mr. Sporay was on active duty. As a result, we cannot say Judge Souder erred by finding that Ms. Kreamer did not act "with reasonable diligence and promptness." Ms. Kreamer's eighth exception is overruled. Ms. Kreamer violated Rule 1.3.

██ Ms. Kreamer next excepts to the conclusion that "Respondent failed to respond meaningfully to numerous communications from Client in violation of Rule 1.4." In support of this exception, Ms. Kreamer points to her representation of Ms. Sporay when she was first retained and notes the hearings and orders that she obtained "expeditiously . . . in order to protect her client." Anything Ms. Kreamer did to represent Ms. Sporay before January 2003 is irrelevant to whether Ms. Kreamer failed to communicate with her client after January 2003, the relevant time period in this case.[19] Even if Ms. Kreamer represented Ms. Sporay well at the beginning of her representation, it does not change the fact that during the relevant time period in this case she failed to respond to requests for information from Ms. Sporay.

Ms. Kreamer also argues that since she was informed in January 2003 that Ms. Sporay's husband "may be called up," her "brief" telephone calls and e-mails to the client were acceptable. We disagree. As mentioned earlier, Rule 1.4 requires attorneys to keep their clients "reasonably informed

---

18. Ms. Kreamer argues that it took Mr. Van Roden many months to obtain discovery and a final divorce, once he took over the representation of Ms. Sporay. On this point, we agree with Petitioner. Whatever Mr. Van Roden did to represent Ms. Sporay is irrelevant to the case at bar. The facts of this case remain painfully clear: Ms. Kreamer did virtually nothing to represent her client or even to communicate with her client from January 2003 until the client terminated the representation eight months later. That is the material point.

19. The Petition for Disciplinary or Remedial Action alleges violations *after* January 2003.

about the status of a matter" and to "promptly comply with reasonable requests for information." In addition, the rule requires attorneys to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Judge Souder's findings include a litany of failures to respond meaningfully to Ms. Sporay's requests for information, over a span of many months. The hearing judge also found that even if Ms. Kreamer had known that Mr. Sporay was on active duty, "Respondent's failure to advise her client that the case could not proceed ... is inexplicable." In view of those facts, we agree with the hearing judge that Ms. Kreamer violated Rule 1.4. *See Attorney Griev. Comm'n v. Zuckerman*, 386 Md. 341, 369, 872 A.2d 693, 710 (2005) (holding that respondent's "failure to pay medical bills in a timely manner and to disburse client funds" violated Rule 1.4 because respondent failed "to keep his clients reasonably informed about the status of their cases."); *Attorney Griev. Comm'n v. James*, 385 Md. 637, 664, 870 A.2d 229, 245 (2005) (holding that respondent violated Rule 1.4 because he did not react to his client's attempts to contact him).

 Finally, Ms. Kreamer excepts to the conclusion that "Respondent violated Rule 8.1 by failing to respond to Petitioner's Requests seeking a response to the Client's complaint." Ms. Kreamer concedes that she made no written response to three letters from the Commission.[20] She argues, however, that her failure to respond in writing should be excused because she called and requested additional time to respond and, when the extended date came, she "was representing a family concerned with the emergency admission of a child to a mental hospital." Thereafter, she mistakenly thought that it was too late for her to respond by letter. In addition, she cooperated with the investigation by meeting with the investigator, producing documents, and submitting to a deposition.

---

**20.** Those letters were dated August 28, 2003, September 8, 2003, and October 15, 2003.

Rule 8.1 notes that a lawyer, in connection with a disciplinary matter, shall not "knowingly fail to respond to a lawful demand for information from ... [a] disciplinary authority...." The August 28 letter from the Commission requested a written response within ten days. It also cited Rule 16–731(d) [21] and noted the concern about completing the investigation within the time established. Finally, the letter informed Ms. Kreamer of Rule 8.1. The September 8 letter referenced the first letter, gave Ms. Kreamer seven days to reply, and reminded Ms. Kreamer of Rule 8.1. Finally, the October 15 letter granted Ms. Kreamer's oral request for an extension and noted that her response was expected by October 29. Ms. Kreamer's eventual response to the Commission, while certainly much better than no response at all, does not excuse her repeated failures to respond in writing, as requested by the Commission several times. *See Attorney Griev. Comm'n v. Fezell,* 361 Md. 234, 249, 253, 760 A.2d 1108 (2000) (noting this Court's "long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information," and also holding that respondent's "belated cooperation with Bar Counsel does not excuse respondent's failure to respond to the previous five letters sent by Bar Counsel"). We agree with the hearing judge that Ms. Kreamer violated Rule 8.1.

▮▮▮▮▮ Bar Counsel excepted to the failure of Judge Souder to find a violation of Maryland Rule of Professional Conduct 1.1 (Competence). Rule 1.1 requires a lawyer to

---

21. Md. Rule 16–731(d) provides:

Unless the time is extended by the Commission for good cause, Bar Counsel shall complete an investigation within 90 days after opening the file on the complaint. Upon written request by Bar Counsel establishing good cause for an extension for a specified period, the Commission may grant one or more extensions. The Commission may not grant an extension, at any one time, of more than 60 days unless it finds specific good cause for a longer extension. If an extension exceeding 60 days is granted, Bar Counsel shall provide the Commission with a status report at least every 60 days. For failure to comply with the time requirements of this section, the Commission may take any action appropriate under the circumstances, including dismissal of the complaint and termination of the investigation.

"provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." In support of this argument, Bar Counsel points to Judge Souder's findings regarding Ms. Kreamer's failure to propound discovery, make a settlement demand, or find out about Ms. Sporay's husband's military status. Judge Souder did not find that Ms. Kreamer violated Rule 1.1 and stated:

> Bar Counsel states that the failure to communicate and the lack of diligence demonstrate that Respondent is not a competent attorney as required by Rule 1.1. This Court did not find persuasive Bar Counsel's argument in this case that violations of Rules 1.3 and 1.4 automatically constitute a violation of Rule 1.1.

We agree that a violation of Rule 1.3 (Diligence) and 1.4 (Communication) does not automatically, in every case, constitute a violation of Rule 1.1 (Competence). Sometimes, however, the facts that support a finding that a respondent violated Rule 1.3 or Rule 1.4 will also support a finding that a respondent violated Rule 1.1. *See Zuckerman,* 386 Md. at 368–370, 872 A.2d at 709–10 (holding that respondent violated Rule 1.1 because he failed to pay clients after settlement for years and because he failed to tell clients that he was holding settlement funds and not paying their medical bills, and holding that the same set of behaviors also constituted a violation of Rule 1.3 and Rule 1.4).

Rule 1.1 requires competent counsel to possess the "legal knowledge, skill, thoroughness and preparation *reasonably necessary* for the representation." (Emphasis added.) As mentioned previously, the fact that Mr. Sporay actually was on active duty during Ms. Kreamer's representation of Ms. Sporay did not insulate Ms. Kreamer from a finding that she did not act with reasonable diligence, in violation of Rule 1.3. A diligent attorney would have done *some* work on the case between January and August of 2003, even if that work would have been brought to a halt once the attorney discovered the active duty status of the husband. That same fact, however, does insulate Ms. Kreamer from a finding of incompetence in

this case. In reality, it was not "reasonably necessary" for Ms. Kreamer to propound discovery or make a settlement demand at the time in question because Mr. Sporay's active duty status would have prevented her from doing so effectively. Therefore, we overrule petitioner's first exception.

■ Bar Counsel also excepted to Judge Souder's statement that "Respondent's apology for her failure to respond in the instant case was accepted," stating that "[t]here was no evidence introduced at trial that the Respondent apologized for failing to respond." Ms. Kreamer's reply to this exception is that petitioner "will not deny that, Respondent had apologized to Petitioner in the several contacts between [them] prior to the trial." Respondent has not pointed to any place in the record containing evidence of an apology. We note, however, that when asked why she did not provide a written answer to the complaint against her, Ms. Kreamer's response was "Well, I certainly regret it but ... I responded to the emergency of the McKinsey family...." That statement is enough to support the hearing judge's finding on this matter. Moreover, even if Ms. Kreamer apologized for her failure to respond to Bar Counsel's requests, that apology does not excuse her failure to respond. It does not change our previous decision to uphold Judge Souder's finding that Ms. Kreamer violated Rule 8.1(b). We overrule petitioner's second exception.

Based upon our review of the record, we are satisfied that the evidence supports the hearing judge's findings of fact, except where noted otherwise, in accordance with the clear and convincing evidence standard. In addition, we agree with the hearing judge that Ms. Kreamer violated Rules 1.3, 1.4, 1.15, 1.16, 8.1, Md. Rule 16–609, and § 10–306 of the Business and Occupations Article of the Maryland Code.

### IV. *Sanction*

■ Turning to the question of the appropriate sanction, we note that our goal in attorney discipline matters is "to protect the public and the public's confidence in the legal

profession rather than to punish the attorney." *Attorney Griev. Comm'n v. Christopher* 383 Md. 624, 639, 861 A.2d 692, 701 (2004). Protecting the integrity of the legal profession and "deter[ing] other lawyers from engaging in violations of the Rules of Professional Conduct," are also reasons for sanctioning attorneys who violate the rules. *Attorney Griev. Comm'n v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001). "Determining the appropriate sanction requires the Court to consider the facts and circumstances of each particular case, including consideration of any mitigating factors." *Attorney Griev. Comm'n v. Post,* 379 Md. 60, 71, 839 A.2d 718, 724 (2003). In addition, " 'the nature and gravity of the violations and the intent with which they were committed' " are relevant considerations. *Id.* (quoting *Attorney Griev. Comm'n of Maryland v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997)). We also have considered "the attorney's prior grievance history . . . the attorney's remorse for the misconduct, and the likelihood of the conduct being repeated." *Post,* 379 Md. at 71, 839 A.2d at 724–725 (citations omitted). As stated in *Attorney Griev. Comm'n v. Monfried,* 368 Md. 373, 794 A.2d 92 (2002), to determine an appropriate sanction we will,

> examine the nature of the misconduct, the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors.

*Monfried,* 368 Md. at 396, 794 A.2d at 105.

Ms. Kreamer's counsel argues that there should be no sanction for Ms. Kreamer's conduct in this case, or, in the alternative, only a reprimand. Bar Counsel, however, recommends a two-year suspension, noting that Ms. Kreamer has previously been disciplined by the Court on two separate occasions. On February 2, 1999, this Court indefinitely suspended her from the practice of law upon finding that Ms. Kreamer failed to communicate with her clients and Bar Counsel, failed to deposit unearned fees in escrow, and mis-

represented the status of client matters. 353 Md. 85, 724 A.2d 666 (1999). We reinstated Ms. Kreamer on June 10, 1999, requiring that she be monitored for two years. On November 19, 2002, this Court reprimanded Ms. Kreamer (with her consent) for not acting with diligence regarding a guardianship matter. Bar Counsel noted at oral argument, however, that Ms. Kreamer had a practice monitor at the time and that contributed to the lesser sanction.

In support of his recommendation for a two-year suspension, Bar Counsel states:

> The Respondent's conduct in this case is a repeat of prior misconduct. It appears that the Respondent's prior sanctions by this Court and the two (2) year monitor has not caused the Respondent to improve her practice. A substantial suspension in this matter is necessary to protect the public from future harm.

Bar Counsel cites *Attorney Grievance Commission v. Montgomery*, 318 Md. 154, 567 A.2d 112 (1989) in support of the request for a two-year suspension. That case is distinguishable from the present case. In *Montgomery*, respondent was found to have failed to do things he had promised to do on the cases of *multiple* clients and to have failed to respond to their repeated requests for information about their various cases. *Montgomery*, 318 Md. at 156–59, 567 A.2d at 113–14. In fact, he disappeared from his office and made it impossible for his clients to reach him. His own staff informed clients that his whereabouts were unknown. *Montgomery*, 318 Md. at 157, 567 A.2d at 113. Moreover, he fabricated documents that he claimed to have filed on behalf of clients, presumably in an attempt to make it look like he had worked on the case. *Montgomery*, 318 Md. at 157, 567 A.2d at 114. Respondent in that case had been disciplined previously for "five instances of professional misconduct, primarily neglect and failure to communicate with his clients between 1977 and 1981," for which he received a sixty-day suspension. *Montgomery*, 318 Md. at 163, 567 A.2d at 117. Noting that respondent's acts in the earlier case were very similar to the acts in the current case, we held that respondent "continued to neglect his clients'

affairs and to be inaccessible to them after the client-attorney relationship has been established." *Montgomery,* 318 Md. at 164, 567 A.2d at 117. We disbarred Mr. Montgomery. *Montgomery,* 318 Md. at 165, 567 A.2d at 118. The facts in the case at bar are not as egregious as those in *Montgomery.* Ms. Kreamer has not been accused of ignoring multiple clients, over periods of years.

Bar Counsel also cites *Attorney Grievance Commission v. Howard,* 299 Md. 731, 475 A.2d 466 (1984). *Howard* is inapposite. In *Howard,* we stated:

Here there was evidence to show that Howard had practiced law in Maryland for approximately 28 years, and that the disciplinary rules violations in this case arose from a difficult relationship with a single client. Nevertheless, Howard misappropriated a client's funds and, among other things, neglected a legal matter, commingled funds, failed to keep records, and engaged in conduct prejudicial to the administration of justice. No extenuating circumstances were presented.

*Attorney Grievance Commission v. Howard,* 299 Md. at 737, 475 A.2d at 469. We also noted Mr. Howard's previous infractions, which included neglecting cases and failing to be present for hearings on a number of occasions, for which he was reprimanded. *Id.* We disbarred Mr. Howard. The other cases relied on by Bar Counsel are equally unavailing. *See Attorney Grievance Commission v. Pollack,* 279 Md. 225, 369 A.2d 61 (1977) (holding that respondent had acted carelessly and negligently in three matters entrusted to him—including a divorce that was delayed for two years—and suspending him for six months); and *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975) (disbarring the respondent because of neglect in a number of clients' cases, in view of previous discipline for failure to file tax returns and neglect of clients cases).

In our view, Bar Counsel's recommended sanction is too harsh. We also think, however, that doing nothing or simply

imposing a reprimand as requested by Ms. Kreamer is too lenient. As we stated in *Phoebus:*

> It is apparent that the prior sanctions—by way of suspensions—did not succeed in imparting to him an appreciation of the seriousness of the duties an attorney owes his clients. Such sanctions obviously were ineffective in undertaking to cure the evil of his prior proven neglect, and failed to persuade him to reform his ways and to conform his conduct to the standards demanded of the profession.

*Phoebus,* 276 Md. at 365, 347 A.2d at 563.

In *Attorney Griev. Comm'n v. Monfried,* 368 Md. 373, 794 A.2d 92 (2002), respondent violated a number of rules, including Rule 1.3 for failing to interview his client, failing to investigate his case, and failing to appear for a hearing. *Monfried,* 368 Md. at 385, 794 A.2d at 98–99. He also violated Rule 1.4 by failing to inform his clients of the status of their cases, failing to engage in substantive conversations with his clients, and failing to inform clients about hearing dates. *Monfried,* 368 Md. at 386, 794 A.2d at 99. Mr. Monfried had been disciplined previously for violating Rule 1.15(a) (Safekeeping Property), Rule 8.1(b) (Bar Admission and Disciplinary matters), Md. Rule 16–603 (Duty to Maintain Account), 16–604 (Trust Account), and § 10–306 of the Business and Occupations .and Professions Article of the Md.Code (Misuse of Trust Money). *Monfried,* 368 Md. at 396, 794 A.2d at 105.

Bar Counsel recommended disbarment. *Monfried,* 368 Md. at 394, 794 A.2d at 104. Mr. Monfried argued that he should be reprimanded. *Id.* We imposed a sanction of indefinite suspension with the right to apply for reinstatement after the expiration of 180 days and required respondent to return a fee to one of the clients. *Monfried,* 368 Md. at 397, 794 A.2d at 106.

In *Cassidy,* respondent violated Rule 1.3 because he was hired to make a simple change to a deed, said he would complete the task in three weeks, and then never finished the task. *Cassidy,* 362 Md. at 696, 766 A.2d at 635. He also violated Rule 1.4 because he repeatedly failed to respond to

client inquiries and because he failed to tell his clients of his suspension from the practice of law. *Cassidy*, 362 Md. at 698, 766 A.2d at 637. Bar Counsel recommended an indefinite suspension in view of respondent's disciplinary history. *Cassidy*, 362 Md. at 699, 766 A.2d at 637. Mr. Cassidy suggested a reprimand. *Cassidy*, 362 Md. at 700, 766 A.2d at 638. Mr. Cassidy's prior violations included a number of reprimands for violations of Rule 1.3 and an eighteen-month suspension for failing to obtain proper payoff amounts in four real estate settlements and for not releasing liens. *Cassidy*, 362 Md. at 699, 766 A.2d at 637.

We noted that " 'lack of communication with one's client, for whatever reason, is a matter of continuing concern to the public,' warranting disciplinary sanction." *Cassidy*, 362 Md. at 700, 766 A.2d at 637 (quoting *Attorney Griev. Comm'n v. Montgomery*, 296 Md. 113, 120, 460 A.2d 597, 600 (1983)). We also stated that,

> when we consider Respondent's conduct in light of his prior disciplinary history, it is clear that, to protect the public, an increase in the degree of discipline beyond that of a reprimand is necessary. The conduct underlying the instant infractions is the same conduct for which Respondent had been disciplined in the past.

*Cassidy*, 362 Md. at 700, 766 A.2d at 638. We imposed a sanction of an indefinite suspension and conditioned Mr. Cassidy's reinstatement on a number of conditions. *Cassidy*, 362 Md. at 701, 766 A.2d at 638.

As in *Cassidy*, the conduct underlying the infractions in Ms. Kreamer's case is the same conduct for which Ms. Kreamer was previously disciplined (failure to communicate with clients and Bar Counsel and lack of diligence). In view of those facts, discipline beyond a reprimand is necessary. Having considered the particular facts and circumstances of this case and Ms. Kreamer's prior discipline history, we think the appropriate sanction is an indefinite suspension with the right to reapply for reinstatement after the expiration of six months.

The period of suspension shall commence thirty (30) days from the date of entry of this Opinion and Order.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–515(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST BARBARA OSBORN KREAMER.*