969 A.2d 311

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Thomas F. PAWLAK.

Misc. Docket AG No. 1, Sept. Term, 2008.

Court of Appeals of Maryland.

April 14, 2009.

**290**

Gail D. Kessler, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland), for Petitioner.

No argument on behalf of Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Mary-

land Rule 16–751(a),[1] filed a Petition for Disciplinary and Remedial Action ("Petition") against Thomas F. Pawlak, Respondent. Bar Counsel charged Respondent with violating the following Maryland Rules of Professional Conduct ("MRPC"): 1.1 (Competence), 1.3 (Diligence), 8.1(a) and (b) (Disciplinary Matters), and 8.4(a) and (d) (Misconduct).[2]

Pursuant to Maryland Rule 16–752(a),[3] we referred the petition to the Honorable Judith C. Ensor of the Circuit Court

---

1. Maryland Rule 16–751(a) provides in pertinent part:

    (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. The relevant provisions of those MRPC state:

    **Rule 1.1 Competence.**
    A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
    **Rule 1.3 Diligence.**
    A lawyer shall act with reasonable diligence and promptness in representing a client.
    **Rule 8.1 Bar admission and disciplinary matters.**
    An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
    (a) knowingly make a false statement of material fact; or
    (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.
    **Rule 8.4 Misconduct.**
    It is professional misconduct for a lawyer to:
    (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
          \*      \*      \*
    (d) engage in conduct that is prejudicial to the administration of justice[.]

3. Maryland Rule 16–752(a) provides:

    (a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require

for Baltimore County, to conduct an evidentiary hearing and to make findings of fact and conclusions of law. Judge Ensor held a hearing on September 4, 2008, and on October 21, 2008, issued her findings of fact and recommended conclusions of law, pursuant to 16–757(c).[4] Judge Ensor found by clear and convincing evidence that Respondent had violated Rules 1.1, 1.3, 8.1(b), and 8.4(a) and (d).[5]

## I. FACTS

Respondent was admitted as a member of the Bar of this Court in July 1970. The Petition stemmed from a complaint concerning Respondent's representation of an estate. The complaint was filed by a party with an interest in the estate.

Judge Ensor made the following findings of fact concerning the charges in the Petition, beginning with general background facts that set her complaint-specific findings in context. Judge Ensor wrote:

### Introduction

By way of background, Thelma Werner ("Ms. Werner") moved home to 3909 Pinewood Avenue in Baltimore City in

---

the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

4. Maryland Rule 16–757(c) provides:

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

5. Judge Ensor did not specify which of the subsections of Rules 8.1 and Rule 8.4 she found Respondent to have violated. It is clear, however, from the charges contained in the Petition, the findings of fact Judge Ensor made concerning the Rule 8.1 and 8.4 charges, and the judge's comments concerning her conclusions of law on those charges, that she found Respondent to have violated Rules 8.1(b) and 8.4(a) and (d).

order to care for her aging mother and stepfather, Daniel G. Imhoff (sometimes "Mr. Imhoff"). After her mother passed, Ms. Werner continued to care for and reside with Mr. Imhoff until his death on November 11, 1977. Upon his death, Mr. Imhoff left to Ms. Werner a life estate in the 3909 Pinewood Avenue home. At the conclusion of the life estate, the home was to be sold, with the proceeds to be distributed pursuant to Mr. Imhoff's will.

Ms. Charlotte W. Main (sometimes "Ms. Main"), an attorney, was appointed personal representative of Mr. Imhoff's Estate. Ms. Main died in 1994.

By letter dated March 31, 1997, Mr. Pawlak contacted Ms. Werner and informed her that he and another attorney by the name of Mr. Prem had succeeded Ms. Main as the attorneys for the Estate of Daniel G. Imhoff.

At the time that this letter was sent, there was in existence an estate checking account with NationsBank, now Bank of America.

On July 28, 1998, Mr. Pawlak wrote to Ms. Pauline Wolfe ("Ms. Wolfe"), another member of Ms. Werner's family, and acknowledged that he had received the requested list of surviving heirs. Mr. Pawlak reiterated that he had "succeeded to the law practice of Charlotte W. Main, Co–Personal Representative" of Mr. Imhoff's Estate. Respondent made clear that he intended "to petition the Court to be appointed as Successor Personal Representative for the purpose of completing the administration and distribution of Uncle Dan's Estate through the sale of 3909 Pinewood Avenue when Thelma Werner's life estate ends." Mr. Pawlak further promised to move forward to obtain the heirs' consents to his appointment "within the next ninety days." The letter also referenced the checking account with Bank of America.

On August 17, 1998, Mr. Pawlak obtained a Consent to Appointment of Personal Representative and Waiver of Bond from Irvin I. Imhoff (Mr. Imhoff's Brother), through his Power of Attorney, Ms. Wolfe.

Mr. Pawlak met with Ms. Wolfe, Ms. Longenecker (another relative), and their respective husbands at the 3909 Pinewood Avenue residence on August 17, 1998. He followed that meeting with a letter dated August 21, 1998. In that correspondence, Mr. Pawlak confirmed that the estate checking account had a balance of $3,000. He also reiterated the importance of having a successor personal representative appointed "to protect the Imhoff heirs' financial interests in the Estate and to provide the legal expertise necessary for the ultimate distribution to the heirs...." Again, Mr. Pawlak promised to forward consents to the Imhoff heirs within the September/October time frame.

Mr. Pawlak did not prepare and/or file with the Court the pleadings necessary to have himself appointed successor trustee.

Judge Ensor then turned to her findings concerning the charges in the Petition. She wrote:

## Findings of Fact

The parties, for the most part, are in agreement as to the material facts and circumstances surrounding the charges lodged against Mr. Pawlak. In August, 2006, twelve years after Ms. Main had passed and nine years after Mr. Pawlak had indicated his intention to petition the Court to appoint a successor trustee, Ms. Werner was 96 years old and suffering from dementia. Ms. Werner had previously given her power of attorney to Roy Sanders, the husband of her niece, Delores Sanders (sometimes "Ms. Sanders"). The Sanders ultimately determined that Ms. Werner could no longer safely reside in the Pinewood Avenue home. Mr. and Mrs. Sanders decided that it would be in Ms. Werner's best interest to relinquish the life estate and move to an assisted living facility. To this end, Ms. Sanders attempted to contact Mr. Pawlak in order to advise him of the change in circumstances and inquire as to the status of the estate issues.

According to Ms. Sanders, she obtained Mr. Pawlak's telephone number from her aunt and placed calls to him on a number of occasions, all without success. Ms. Sanders testified that she reached a law office and left messages on the firm answering machine. She further testified that these calls were not returned. According to her testimony, having failed to reach Mr. Pawlak by phone, Ms. Sanders wrote to him at least twice. Ms. Sanders' first letter to Mr. Pawlak, dated August 20, 2006, was admitted into evidence[ ]. In this correspondence, Ms. Sanders, among other things, requested information as to whether Respondent still had possession of the records pertaining to the matter and inquired as to "how it is to be handled." Ms. Sanders closed her letter by asking Mr. Pawlak to respond to her inquiries "as soon as possible." Ms. Sanders pointed out in the letter that "[w]henever Thelma vacates the house someone must take charge of it."

Mr. Pawlak denies ever having received the August 20, 2006 letter. During his testimony, he emphasized that, while the address was correct, Ms. Sanders failed to include the appropriate suite number. Ms. Sanders, however, testified that the letter was never returned to her.

Roy Sanders testified that, during the Spring of 2006, he sent Mr. Pawlak an up-to-date list of current heirs to the Imhoff Estate, together with their contact information. According to Mr. Sanders, he and his wife met with Mr. Pawlak at the Pinewood Avenue address in June, 2006. Mr. Sanders testified that, during this meeting, Mr. Pawlak again promised that he would handle the matters on behalf of the estate and "get this through the courts." At that same time, Mr. Pawlak discussed with the Sanders the need to sell the house as well as the need to obtain an appraisal of the personal property in the home belonging to the estate.

In February 2007, Mr. and Ms. Sanders moved Ms. Werner to an assisted living facility in York, Pennsylvania. After the move, for some period of time, the Sanders continued to maintain the Pinewood Avenue home. They

also left in the home several personal items belonging to the estate. In May or June of that same year, however, the Sanders relinquished the keys to 3909 Pinewood Avenue to Mr. Pawlak. Since that time, Mr. Pawlak has maintained the property, using his personal funds to do so.

Based on these findings, Judge Ensor drew the following conclusions of law.[6]

### Rule 1.1  Competence.

After considering all of the facts and circumstances presented by way of live testimony and documentary evidence, this Court finds by clear and convincing evidence that the Respondent violated Rule 1.1 of the Maryland Rules of Professional [C]onduct. Obviously, the significant delay, in and of itself, is deeply concerning. That said, perhaps even more disturbing is Mr. Pawlak's own testimony that, after Ms. Main's death and his letter of March, 1997, he saw no reason to petition the Court for a successor trustee. At a minimum, Mr. Pawlak knew there existed an estate checking account with a balance of approximately $3,000. He knew this money was to be used to finance capital repairs on the Pinewood Avenue home. He knew that the account listed Ms. Main as the personal representative and that, absent action on his part, the funds could not be accessed. He knew that, absent activity on the account, the funds would be deemed abandoned and would eschew [sic] to the State. Certainly, Mr. Pawlak's inaction demonstrates a lack of thoroughness and preparedness. His failure to appreciate the ramifications of this inaction constitutes lack of the legal knowledge required to handle this representation.

### Rule 1.3  Diligence.

This court finds, again by clear and convincing evidence, that Mr. Pawlak violated Rule 1.3 of the Maryland Rules of Professional Conduct. In March, 1997, Mr. Pawlak under-

---

6. We have omitted from our recitation of Judge Ensor's conclusions of law the text of the various charged rule violations.

took to represent the Imhoff Estate. Literally, more than one decade later, the appropriate paperwork has not been filed with the Court. The home is currently vacant and uninsured. Moreover, the beneficiaries have yet to receive their distributions. In addition, Mr. Pawlak failed to respond to Ms. Sanders' inquiries. There is no question that Mr. Pawlak has been less than diligent.

### Rule 8.1(a), (b) Bar Admission and Disciplinary Matters.

Mr. Pawlak is charged with knowingly failing to respond to a lawful demand for information from a disciplinary authority. He readily concedes that he received correspondence from Bar Counsel on October 23, 2006, December 7, 2006, January 10, 2007, and again on January 24, 2007. Mr. Pawlak admits that, in each of these letters, Bar Counsel sought a response to Ms. Sanders' Complaint. Mr. Pawlak failed to respond to any of these letters. Indeed, he took no action whatsoever until a Bar Counsel Investigator contacted him in March 2007.

At the September 4th hearing, Mr. Pawlak indicated that he failed to respond to the various correspondence from Bar Counsel because he could not locate the Imhoff file.[2] It is noteworthy, however, that Mr. Pawlak never contacted Bar Counsel to inform her that the file was missing.

[2]. If, indeed, Mr. Pawlak could not find the file, this fact would further support the findings that with respect to Rules 1.1 and 1.3.

It is noteworthy, however, that Mr. Pawlak never contacted Bar Counsel to inform her that the file was missing. Based in large part on Mr. Pawlak's own testimony, this Court finds that the Respondent was embarrassed by the course of his representation and further ashamed to discover that he was the subject of a Complaint. He was aware of the Complaint, knew that Bar Counsel was repeatedly seeking information from him, and failed to respond. Therefore, this Court finds by clear and convincing evidence that Mr. Pawlak violated Rule 8.1 of the Maryland Rules of Professional Responsibility.

**Rule 8.4(a), (d) Misconduct.**

Mr. Pawlak's lack of diligence and competence in handling the instant matter clearly amounts to a violation of the Maryland Lawyers' Rules of Professional Conduct. As stated previously, Mr. Pawlak undertook to represent the Imhoff Estate more than a decade ago. To date, a successor trustee has not yet been appointed. Obviously, this significant delay amounts to misconduct, but Mr. Pawlak further violated the Rules of Professional Conduct by not responding promptly to correspondence from Bar Counsel, despite admitting that he was aware that a Complaint had been filed against him and that Bar Counsel had repeatedly sought information from him.

Additionally, Mr. Pawlak's conduct has been prejudicial to the administration of justice given that the property located at 3909 Pinewood Avenue currently remains vacant and uninsured, and the beneficiaries of the Imhoff Estate have yet to receive their distributions. Furthermore, Mr. Pawlak allowed the Bank of America account, with approximately $3,000 to eschew [sic] to the State. This conduct has served to undermine the public's trust in the legal system. Therefore, this Court finds by clear and convincing evidence that Mr. Pawlak's conduct with regard to the handling of the Imhoff Estate rises to the level of misconduct pursuant to Rule 8.4.

Judge Ensor summarized her conclusions of law, as follows.

### Conclusions of Law

This Court finds by clear and convincing evidence that Respondent violated Maryland Rule of Professional Conduct 1.1 by failing to petition the Court for a successor trustee despite the serious ramifications of not doing so, including allowing $3,000 in the estate checking account with Bank of America to eschew [sic] to the State.

This Court also finds by clear and convincing evidence that Respondent violated Rule 1.3 by failing to file the appropriate paperwork to become successor trustee despite

undertaking to represent the Imhoff Estate more than a decade ago.

This Court further finds by clear and convincing evidence that Respondent violated Rule 8.1 by failing to respond timely to correspondence sent by Bar Counsel.

This Court also finds by clear and convincing evidence that Respondent violated Rule 8.4 by failing to petition the Court for a successor trustee despite undertaking to represent the Imhoff Estate nearly a decade ago and by failing to respond timely to the various correspondence sent by Bar Counsel. This Court further finds by clear and convincing evidence that Defendant's actions were prejudicial to the administration of justice given that the property located at 3909 Pinewood Avenue currently remains vacant and uninsured, the multiple beneficiaries of the Imhoff Estate have yet to receive their distributions, and Mr. Pawlak allowed the Bank of America account with approximately $3,000 to eschew [sic] to the State.

Judge Ensor found the following facts in mitigation.

### Mitigating Factors

Mr. Pawlak was admitted to the Maryland Bar in June, 1970. This is the first time in his thirty-eight years of practice that he has been accused of any sort of misconduct. At the hearing, Mr. Pawlak appeared genuinely remorseful, indicating several times that he was ashamed and embarrassed about the manner in which he handled the case. He made clear that he was not trying to hide anything, and that he did not intend for this situation to occur. Mr. Pawlak indicated that he has been in denial about the status of this matter. He clearly now understands that his failure to prudently address the situation has, in his own words, "tarnished his reputation."

Mr. Pawlak has not sought attorney's fees in this manner. Additionally, Mr. Pawlak has advanced $2,000 of his own funds to maintain the 3909 Pinewood Avenue property, paying, among other things, property taxes and utility bills.

He has also utilized his own funds to maintain the lawn at the property on a regular basis.

Furthermore, at the hearing on this matter, Mr. Pawlak made clear that he accepts full responsibility and stands ready to make things right. The Respondent stated that he would like the opportunity to take the necessary steps to retrieve the $3,000 that was once in the estate checking account with Bank of America. Mr. Pawlak promised that, if that amount is no longer recoverable, he will personally reimburse the estate. He also asked for another opportunity to file the requisite substitution paperwork with the Court.

Mr. Pawlak's actions in the case at bar appear to be an aberration.

## II. EXCEPTIONS

Neither Petitioner nor Respondent has filed exceptions to Judge Ensor's findings of fact and conclusions of law.

## III. STANDARD OF REVIEW

We recently set forth the standard by which we consider attorney grievance matters:

This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland. Even though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. This Court gives deference to the hearing judge's assessment of the credibility of witnesses. Factual findings by the hearing judge will not be interfered with if they are founded on clear and convincing evidence. All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court.

*Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008) (citations and internal quotation marks omitted).

■ "[T]he hearing judge must 'apply the clear and convincing standard of proof when weighing the evidence'" in order to find the facts. *Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 54, 930 A.2d 328, 335 (2007) (quoting *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 16, 904 A.2d 477, 486 (2006)); *see* Md. Rule 16–757(b).[7] "'The clear and convincing standard of proof lies somewhere between a preponderance of evidence standard, which is generally applied to civil cases, and beyond a reasonable doubt standard, which is applied to most crimes.'" *Siskind,* 401 Md. at 54, 930 A.2d at 335 (quoting *Ward,* 394 Md. at 16, 904 A.2d at 486).

## IV. DISCUSSION

We have stated that no exceptions have been filed. Therefore, pursuant to Rule 16–759(b)(2)(A),[8] we shall "treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." *Accord Attorney Grievance Comm'n v. Elmendorf,* 404 Md. 353, 360, 946 A.2d 542, 546 (2008). In the exercise of our independent review of the record, moreover, we hold that Judge Ensor's conclusions of law are supported by clear and convincing evidence. Md. Rule 16–759(b)(1);[9] *see Attorney Grievance Comm'n v. Harris,* 403 Md. 142, 156, 939 A.2d 732, 741 (2008).

---

7.  Maryland Rule 16-757(b) provides:

    (b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

8.  Maryland Rule 16–759(b)(2)(A) provides in relevant part:

    (b) **Review by Court of Appeals.**

    \*    \*    \*

    (2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

9.  Maryland Rule 16–759(b)(1), provides:

    (b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

All that remains, then, is the task of determining the appropriate sanction for Respondent's violations of the MRPC. Bar Counsel recommends an indefinite suspension because "Respondent has evidenced by his actions a sufficient and persistent disregard for his clients [sic] best interest by failing to move the matter forward for over a decade."

"Our goal in attorney discipline matters is to protect the public and the public's confidence in the legal profession rather than to punish the attorney." *Attorney Grievance Comm'n v. Kreamer,* 404 Md. 282, 348, 946 A.2d 500, 539 (2008) (internal quotation marks and citations omitted). We seek to deter other attorneys from violating the Rules of Professional Conduct. *Id.* "The severity of the sanction depends on several things, including 'the circumstances of each case, the intent [with] which the acts were committed, the gravity, nature and effects of the violations as well as any mitigating factors.'" *Attorney Grievance Comm'n v. Nichols,* 405 Md. 207, 217, 950 A.2d 778, 785 (2008) (citation omitted).

We consider the following facts and circumstances presented by the case at bar. Respondent, having repeatedly assured Ms. Werner, her family, and the heirs to the Imhoff Estate that he would represent the Estate, owed them competent and diligent representation. Respondent did not carry out either obligation. He failed for nearly a decade to follow through on his promise to several of the interested parties that he would petition for appointment as substitute personal representative. His years of inaction caused the Estate checking account (the existence of which he was fully aware) to escheat to the State. Moreover, in 2006 he failed to respond to Ms. Sanders's multiple efforts to obtain his assistance in handling the disposition of the Pinewood Avenue property.

Even after Respondent took over some responsibility for the property the following year, his efforts on behalf of the Estate were modest at best. Importantly, he made no effort even then to carry out his promise to seek appointment as substitute personal representative, sell the house, and distribute the

residue of the Estate to the heirs. Respondent's conduct in connection with the Imhoff Estate led, at the least, to significant delay in closing the Estate, and violated MRPC Rules 1.1, 1.3, and 8.4(a) and (d).

Moreover, Respondent intentionally and repeatedly failed to cooperate with Bar Counsel's inquires during investigation of this matter. Respondent's recalcitrance in that regard violated MRPC Rule 8.1(b), and, like his conduct in connection with the Imhoff Estate, shows a disregard for the proper administration of justice, thereby violating MRPC Rule 8.4(a) and (d).

The mitigating facts that Judge Ensor found include that Respondent has been an attorney for 38 years and has not previously been charged with professional misconduct. He did not seek fees in connection with the Imhoff matter, and he advanced nearly $2,000 of his own funds to maintain the Pinewood Avenue property. The judge also noted that Respondent's conduct in this matter appears to be an aberration, and he has shown genuine remorse.

Judge Ensor considered as well that Respondent "made clear that he accepts full responsibility and stands ready to make things right." The judge noted Respondent's testimony "that he would like the opportunity to take the necessary steps to retrieve the $3,000 that was once in the estate checking account with Bank of America." Judge Ensor also noted that Respondent "promised that, if that amount is no longer recoverable, he will personally reimburse the estate." Judge Ensor noted, too, that Respondent "asked for another opportunity to file the requisite substitution paperwork with the Court."

We accept Judge Ensor's observations as supported by the facts presented to her at the time. We received information from Bar Counsel at oral argument in this case, however, that now casts into serious doubt at least one of the judge's observations. Bar Counsel informed us that, as of February 2, 2009 (three days before the date of oral argument before us), Respondent still had not followed through on his promise to seek appointment as personal representative of the Imhoff

Estate and complete the final administration of the Estate. In noting that fact, we are aware that the Imhoff heirs may not wish Respondent to pursue such appointment. However, unless or until the wishes of the Imhoff heirs are made clear in that regard, we are left only with the representation of Bar Counsel that Respondent, so far, has reneged on his express promise to the court to try to remediate his past transgressions.

We have held in the past that indefinite suspension is the proper sanction to impose when an attorney has violated "various [ ] provisions of the MRPC coupled with a violation of MRPC 8.1." *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 50, 785 A.2d 1260, 1268 (2001); *see also Attorney Grievance Comm'n v. Lee*, 393 Md. 546, 564–65, 903 A.2d 895, 906 (2006) (holding that "[i]ndefinite suspension from the practice of law is the proper sanction where the attorney violates MRPC 1.3, 1.4, 8.1(b), and 8.4(d) by failing to communicate with the client and failing to cooperate with Bar Counsel and where the attorney's conduct is not so egregious that only disbarment can adequately protect the public"); *Attorney Grievance Comm'n v. Granger*, 374 Md. 438, 443–450, 462, 823 A.2d 611, 614–18, 626 (2003) (imposing indefinite suspension, with the right to reapply in six months, for an attorney's first disciplinary proceeding, where the attorney (1) failed to timely file the necessary documents for his client's imminent bankruptcy and foreclosure, and (2) made false representations to Bar Counsel during its investigation, thereby violating MRPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 8.1, 8.4(c) and (d)); *cf. Attorney Grievance Comm'n v. Kendrick*, 403 Md. 489, 520, 522, 943 A.2d 1173, 1190, 1192 (2008) (holding that an indefinite suspension was the proper sanction in a case involving an attorney's administration of an estate, where the attorney had violated MRPC 1.1, 1.3, 1.5, and 1.15).

Indefinite suspension is the appropriate sanction for Respondent's violations, given all of the circumstances surrounding this case—the number and sort of violations, the mitigating factors, and Respondent's seeming failure to follow

through on his promise to the hearing judge that he would attempt to "make things right" in the Imhoff matter. That sanction, moreover, is in line with the sanction imposed in the cases we have cited. The suspension shall commence thirty days from the date of filing of this Opinion.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST THOMAS F. PAWLAK.**