77 A.3d 1107

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Anthony Maurice HARMON.

**Misc. Docket AG No. 83, Sept. Term, 2011.**

Court of Appeals of Maryland.

Oct. 21, 2013.

Dolores O. Ridgell, Assistant Bar Counsel (Glenn M. Gross-man, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Anthony Maurice Harmon, pro se.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and WATTS, JJ.

McDONALD, J.

The Attorney Grievance Commission ("Commission") charged Anthony Maurice Harmon with violating several provisions of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), including MLRPC 1.3 (duty to act with reasonable diligence and promptness), MLRPC 1.4 (duty to inform and consult with client and comply with requests for information), MLRPC 1.5(a) (prohibition against unreasonable fees), MLRPC 1.15 (duty to keep safe funds of clients or third parties), MLRPC 8.1(b) (duty to respond to lawful demand for information from disciplinary authority), and MLRPC 8.4(d) (prohibition against conduct prejudicial to the administration of justice). The alleged violations all arose during Mr. Harmon's representation of three clients.

Pursuant to Maryland Rules 16–752(a) and 16–757, we referred the matter to Judge Toni E. Clarke of the Circuit Court for Prince George's County to conduct a hearing and to provide findings of facts and recommended conclusions of law. Based on the facts concerning the violations that were deemed admitted and the evidence concerning mitigation presented at the hearing, the hearing judge concluded that Mr. Harmon had violated MLRPC 1.3, 1.4, 1.5(a), and 8.1(b), and that no

mitigating circumstances existed.[1] No exceptions were filed by either party to the hearing judge's findings and conclusions.

We cannot say that the hearing judge's findings of fact were clearly erroneous; those findings, though summary in nature, lead inexorably to the conclusion that Mr. Harmon committed the violations found by the hearing judge. In the absence of any exceptions, our task is to determine the appropriate sanction in this case. Bar Counsel recommends that Mr. Harmon be indefinitely suspended for his violations, while Mr. Harmon urges us to consider suspension for a definite period to run concurrently with the sanction that was recently imposed for his prior violations.[2] For the reasons stated below, we agree with Bar Counsel that an indefinite suspension is in order.

## Procedural History

On August 9, 2012, pursuant to the parties' request, the hearing judge postponed the evidentiary hearing until October 18, 2012.[3] At the August proceeding, she also ruled that the facts in Bar Counsel's Request for Admission would be deemed admitted because Mr. Harmon's Answer to the Re-

---

**1.** Bar Counsel withdrew the allegation that Mr. Harmon violated MLRPC 1.15, and the hearing judge made no findings as to that allegation. Although the record before us does not indicate explicitly that Bar Counsel abandoned the allegation that Mr. Harmon violated MLRPC 8.4(d), it appears that Bar Counsel did not pursue that allegation and the hearing judge did not address it in her findings of fact and conclusions of law.

**2.** Mr. Harmon has been a subject of a prior disciplinary action for mishandling his attorney trust account and for his failure to respond to Bar Counsel's resulting inquiries. In that case, this Court ordered that Mr. Harmon be indefinitely suspended with the right to apply for reinstatement no sooner than six months. *Attorney Grievance Comm'n v. Harmon,* 433 Md. 612, 72 A.3d 555 (2013).

**3.** At the August 9, 2012 hearing, Mr. Harmon requested a postponement, stating that he wanted to call character witnesses and witnesses regarding his state of mind at the time of his violations. The Commission joined Mr. Harmon's request for the purpose of obtaining an independent medical evaluation of Mr. Harmon.

quest for Admission was unresponsive, it was not filed within 30 days as required under Maryland Rule 2–424(b), and he did not file a request for an extension of time.[4] *See* Maryland Rule 2–424(c) ("If the court determines that an answer does not comply with the requirements of this Rule, it may order either that the matter is admitted or that an amended answer be served.").

The evidentiary hearing on October 18, 2012 was devoted solely to the existence of mitigating circumstances and the Commission's allegation that Mr. Harmon had failed to respond to Bar Counsel's lawful requests for information during its investigations. Jeffrey Janofsky, M.D., an expert in the area of forensic psychiatry, and Investigator William Ramsey testified on behalf of the Commission. Mr. Harmon testified that difficulties in his personal life and the resulting emotional turmoil constituted mitigating factors, but did not call character witnesses or offer expert testimony or documentation.

### Background

 Mr. Harmon was admitted to the Maryland Bar in 1999. During the time period relevant to this proceeding, he maintained an office in Prince George's County. The alleged violations stem from the complaints of three clients concerning his representation of them. The hearing judge deemed the facts described below to be admitted as to those matters, and made additional findings concerning Mr. Harmon's failure to cooperate with Bar Counsel and the lack of mitigating circumstances.

*The Christian Complaint*

In August 2008, Alexis Christian paid $2,500 to retain Mr. Harmon to represent her in an uncontested divorce and a

---

4. Mr. Harmon was personally served with the petition on May 8, 2012. On July 11, 2012, he filed his answer, generally denying and admitting to the factual averments in the petition. On May 8, 2012, Bar Counsel served Mr. Harmon with a Request for Admission of Facts and Genuineness of Documents, and a Request for Production of Documents. Three months later, on August 9, 2012, Mr. Harmon filed his Answer to the Request for Admission of Facts and Genuineness of Documents.

related marital property settlement. Subsequently, she paid additional funds for costs and filing fees.

During his representation, Mr. Harmon failed to adequately inform Ms. Christian concerning the terms of the fee agreement and the manner in which the fee would be calculated; failed to keep her informed regarding the accrual of fees; and charged her an unreasonable and excessive fee. He also failed to act with reasonable diligence and promptness in obtaining service of process on her husband, pursuing the divorce on her behalf, and responding to her requests for information. After Ms. Christian filed a complaint with the Commission, he failed to respond to Bar Counsel's demands for information—in particular, an accounting of the fees he charged Ms. Christian.

*The Lawrence Complaint*

On or about July 20, 2007, Steven Lawrence retained Mr. Harmon to represent him in a divorce and related child custody and support matter. Mr. Lawrence signed a retainer agreement, agreeing to pay a $2,500 retainer fee and $200 per hour for Mr. Harmon's services. He paid the retainer fee in installments over the next two and one-half months. Mr. Harmon represented Mr. Lawrence until his divorce became final on April 21, 2009.

During his representation, Mr. Harmon failed to provide Mr. Lawrence an accounting for the use of the $2,500 retainer fee, and to keep him informed, including failing to answer his requests for information concerning the fee accrual. After the representation had ended, Mr. Harmon failed to respond to Mr. Lawrence's requests for information regarding the fees. Mr. Harmon also failed to respond to Bar Counsel's demand for information during its investigation.

*The Proctors' Complaint*

On or about August 13, 2009, Mr. Harmon agreed to represent Timothy and Natalie Proctor (the "Proctors") in an employment matter in the United States District Court for the District of Maryland, even though he was not admitted to practice before that court. Furthermore, Mr. Harmon mis-

represented to the Proctors that he was experienced in employment law.

During his representation, Mr. Harmon failed to act with reasonable diligence and promptness and failed to respond to the Proctors' demands for information concerning the case. In particular, Mr. Harmon failed to inform the Proctors about the time and location of a scheduled mediation in a timely manner. In addition, Mr. Harmon failed to keep the Proctors informed about the accrual of attorney's fees, and failed to respond to Bar Counsel's demand for information during its investigation.

*Bar Counsel's Requests for Responses to Complaints*

Bar Counsel sent a letter notifying Mr. Harmon of Ms. Christian's complaint on July 16, 2010, and requesting a written response within 15 days. Bar Counsel subsequently sent a second letter, again requesting a written response within 10 days. Approximately two months later, on September 15, 2010, Bar Counsel received Mr. Harmon's response, dated July 31, 2010; Mr. Harmon represented that he had sent the response on August 1, 2010.

Bar Counsel sent a letter notifying Mr. Harmon of Mr. Lawrence's complaint on November 12, 2010 and requesting a written response within 15 days. Mr. Harmon failed to respond to the request. Bar Counsel sent a letter notifying Mr. Harmon of the Proctors' complaint on October 6, 2010, and requesting a written response within 15 days; this letter was followed by a second letter on November 3, 2010, and a third letter on January 5, 2011. Mr. Harmon finally replied to the third letter on January 25, 2011.

*Bar Counsel's Requests for Production of Files and Financial Records*

On November 22, 2010, Investigator Ramsey interviewed Mr. Harmon in regard to Ms. Christian's complaint, and asked Mr. Harmon to produce the financial records of the fees he received from Ms. Christian in 2008. Mr. Harmon did not comply with this request.

On December 14, 2010, Assistant Bar Counsel and Investigator Ramsey met with Mr. Harmon and asked him to provide records of the payments he received from both Ms. Christian and Mr. Lawrence. This request was followed by Bar Counsel's letters of December 16, 2010 and January 31, 2011, requesting Mr. Harmon to either provide the records or specify what records he was unable to provide. Mr. Harmon never responded.

On April 5, 2011, Investigator Ramsey met with Mr. Harmon and requested that he provide a copy of the Proctors' file. Because Mr. Harmon did not comply with this request, Investigator Ramsey scheduled a meeting at Mr. Harmon's office on June 27, 2011. Investigator Ramsey arrived at Mr. Harmon's office for the scheduled meeting but left after Mr. Harmon failed to appear more than a half-hour after the appointed time.

On July 14, 2011, Mr. Harmon finally delivered the copies of the files of the three complaining clients, but he never produced the requested financial records of the payments he received from Ms. Christian and Mr. Lawrence.

*Bar Counsel's Requests for Production of Medical Records*

On August 17, 2012, Bar Counsel sent a letter informing Mr. Harmon that he should contact the Commission's expert psychiatrist, Dr. Jeffrey Janofsky, on or before August 30, 2012 to arrange an appointment. Bar Counsel asked Mr. Harmon to provide "medical records from [his] primary care physician, any other physicians who treated [him] within the last 4 years and any hospitalizations within the last 4 years," as well as "records, including treatment notes," from Dr. Raymond Carnegie and Mr. Lloyd Williams.[5]

Dr. Janofsky met with Mr. Harmon on September 11, 2012. However, Mr. Harmon did not bring the requested records for

---

**5.** In his Answers to Bar Counsel's Interrogatories, filed August 9, 2012, Mr. Harmon stated that he was in counseling with Dr. Raymond Carnegie, a psychologist, and Mr. Lloyd Williams, a "spiritual counsel" who is also a member of his church.

Dr. Janofsky's review. During the session, Dr. Janofsky again requested that Mr. Harmon provide him with any past psychiatric treatment records and, when Mr. Harmon did not comply, Dr. Janofsky left him a phone message repeating the request. Mr. Harmon never provided the requested records. The only document Dr. Janofsky received as to Dr. Carnegie was a letter by Dr. Carnegie dated November 3, 2011, which stated that Mr. Harmon had been undergoing therapy with Dr. Carnegie, that a number of personal issues had "taken a toll on Mr. Harmon," but that Dr. Carnegie had "not seen any evidence that [Mr. Harmon] is incapable of performing the duties of his profession." [6]

At the October 2012 evidentiary hearing, Mr. Harmon testified that he had asked Dr. Carnegie, by telephone and in person during a counseling session in late August 2012, to provide his records and notes to Bar Counsel. However, Mr. Harmon was unable to explain why Dr. Carnegie never provided them.

*The Hearing Judge's Conclusions of Law*

Based on the admissions, the hearing judge held that Mr. Harmon failed to act with reasonable diligence and promptness in representing all three clients in violation of MLRPC 1.3 and, in particular, failed to act with reasonable diligence and promptness in serving the complaint on Ms. Christian's husband and pursuing her divorce. The hearing judge also concluded, based on the admissions, that Mr. Harmon violated MLRPC 1.4 with respect to his representation of all three clients. In particular, she determined that Mr. Harmon failed to respond to Ms. Christian's requests for information, that he failed to keep Mr. Lawrence informed about the accrual of attorney's fees, and that he failed to respond to Mr. Lawrence's request for information regarding the fees both during and after the representation. Furthermore, Mr. Harmon failed to respond to the Proctors' demands for information

---

**6.** The letter had been submitted by Mr. Harmon in connection with his prior disciplinary action. See footnote 2 above.

about the representation, and failed to keep them informed concerning the time and location of the mediation and the accrual of attorney's fees. The hearing judge concluded, based on the facts admitted, that Mr. Harmon attempted to charge Ms. Christian an unreasonable or excessive fee in violation of MLRPC 1.5(a).

Based on evidence presented by Bar Counsel, the hearing judge concluded that Mr. Harmon knowingly failed to respond to Bar Counsel's lawful requests for information from July 2010 to June 2011 in violation of MLRPC 8.1(b), which requires an attorney to respond to requests from the disciplinary authority for information without need for a subpoena. *See Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108 (2000).

Finally, the hearing judge found that Mr. Harmon did not prove by a preponderance of evidence that mitigating circumstances existed. She noted that, even though Mr. Harmon testified that he suffered from numerous personal problems and depression, he did not offer any expert testimony or medical records to corroborate his testimony. Relying on Dr. Janofsky's expert opinion that Mr. Harmon did not suffer from a physical or mental disability that could have caused the misconduct, and Mr. Harmon's own testimony that his personal problems did not cause him to neglect his responsibilities to his clients, the hearing judge found that the violations were not caused by any physical or mental disorder. Instead, she found aggravating circumstances, stating that Mr. Harmon intentionally failed to cooperate in Bar Counsel's investigations of the three complaints, committed multiple violations, and refused to acknowledge the wrongful nature of his misconduct.

## Discussion

*MLRPC 1.3, 1.4, and 1.5(a)*

We agree with the hearing judge's conclusions that Mr. Harmon violated MLRPC 1.3, 1.4, and 1.5(a). The hearing judge's conclusions were based on facts deemed admitted, and

Mr. Harmon has not filed any exceptions to her findings of fact or conclusions of law. There is no need for extended analysis of the application of the above rules to Mr. Harmon's conduct.

*MLRPC 8.1(b)*

MLRPC 8.1(b) prohibits attorneys from "knowingly fail[ing] to respond to a lawful demand for information from an admissions or disciplinary authority. . . ." MLRPC 8.1(b). This Court has held that evidence of repeated failures to respond to Bar Counsel's investigative requests can establish a violation of Rule 8.1. *See, e.g., Attorney Grievance Comm'n v. Kreamer*, 387 Md. 503, 530–31, 876 A.2d 79 (2005) (attorney violated Rule 8.1(b) when she failed to respond to three written requests from Bar Counsel); *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 174, 994 A.2d 928 (2010) (attorney violated Rule 8.1(b) by failing to respond to Bar Counsel's numerous requests for information and failing to provide the requested documents until pre-trial proceedings).

We agree with the hearing judge's conclusion that Mr. Harmon violated MLRPC 8.1(b). The record indicates that Mr. Harmon never responded to Bar Counsel's letter, dated November 12, 2010, informing him of Mr. Lawrence's complaint. In addition, he did·not respond to the July 12, 2010 letter in regard to Ms. Christian's complaint until two months later on September 15, 2010,[7] and he did not respond to the October 6, 2010 letter regarding the Proctors' complaint until more than three months later on January 25, 2011.[8]

Furthermore, Mr. Harmon never provided the financial records of payments he received from Ms. Christian and Mr. Lawrence despite Bar Counsel's repeated requests—first at the November 22, 2010 and December 14, 2010 meetings, and

---

7. Bar Counsel sent another letter on August 20, 2010. The letter warned Mr. Harmon about his obligations under MLRPC 8.1.

8. Bar Counsel sent two more letters on November 3, 2010 and January 5, 2011. A warning regarding MLRPC 8.1 appeared in those two letters.

subsequently, in letters dated December 16, 2010, and January 31, 2011. Mr. Harmon also failed to appear for the June 27, 2011 meeting with Investigator Ramsey at his own office. Even though Mr. Harmon eventually delivered the client files on July 14, 2011, the files did not include the requested financial records.

At the October 2012 evidentiary hearing, Mr. Harmon contended that he did not produce the records because he believed that Bar Counsel had already obtained the records by subpoenaing his bank. This explanation, as the hearing judge noted, is unpersuasive given that the subpoena directed to his bank only called for the production of bank records beginning in March 2009 and the request directed to Mr. Harmon called for payments made prior to 2009. Even if he mistakenly believed that Bar Counsel had already obtained the records, Mr. Harmon should have notified Bar Counsel of his understanding as the letters requested that he either produce the records or indicate which records he could not provide.

Lastly, Mr. Harmon never provided the medical records from his primary physician or Dr. Carnegie despite numerous requests from Bar Counsel and Dr. Janofsky. His explanation that he was not aware that Bar Counsel sought records from his primary physician is unconvincing, as the hearing judge pointed out, given that Bar Counsel's letter explicitly asked for "medical records from [his] primary care physician."

*Sanction*

■ The Commission recommends that Mr. Harmon be suspended indefinitely for his violation of MLRPC 1.3, 1.4, 1.5(a), and 8.1(b), while Mr. Harmon recommends a suspension for a definite period of time to run concurrently with the sanction imposed in his prior case. Given his prior disciplinary history, his apparent inability to appreciate the seriousness of his misconduct, the absence of mitigating circumstances, and the existence of aggravating factors, we agree that an indefinite suspension is the appropriate sanction in this case.

■ Mr. Harmon has proffered various circumstances in mitigation, including that, at the time of the conduct at issue, he was suffering from depression due to problems in his personal life, including a recent divorce, the death of his grandfather, the foreclosure on a home, and his son's arrest. The hearing judge, however, declined to find mitigating circumstances, stating that Mr. Harmon did not prove by a preponderance of evidence that he suffered from mental or physical impairments that caused the misconduct—a finding that appears unassailable on the record before us. Mr. Harmon did not offer any character witnesses or expert testimony to corroborate his claim that depression caused his misconduct. In fact, despite repeated requests by Dr. Janofsky, Mr. Harmon never produced the medical records from his primary physician or his therapist, Dr. Carnegie. The hearing judge's finding is further supported by Dr. Janofsky's testimony that Mr. Harmon did not suffer from any mental or physical disorder that may have affected his ability to represent his clients or respond to Bar Counsel's requests for information.

■ While there are no mitigating circumstances, there are several aggravating circumstances. The hearing judge found, and we agree, that three aggravating factors are implicated: multiple violations, bad faith obstruction of the disciplinary process, and refusal to acknowledge the wrongful nature of his conduct. Mr. Harmon committed multiple violations with respect to all three clients, and he intentionally failed to cooperate in Bar Counsel's investigations by withholding client files and financial records from Bar Counsel and by withholding his medical records from Dr. Janofsky. In addition, while Mr. Harmon admitted that his depression affected his ability to perform administrative functions such as keeping track of bills, he maintained that it did not affect his representation of his clients. Mr. Harmon does not appear to appreciate the wrongful nature, or the seriousness, of his misconduct. He denies that his representation fell below acceptable standards of care, downplays the seriousness of his failure to keep his clients informed about the accrual of fees as mere "administra-

tive mistakes," and contends that the three clients filed the complaints because they "didn't like their final bill."

In addition to the three aggravating factors that the hearing judge found, we find additional aggravating factors: a pattern of misconduct and prior discipline. The record in this proceeding demonstrates a pattern of misconduct. Mr. Harmon's representation of his three complaining clients between 2007 and 2009 was marked by neglect and inattention. In each of the three cases, he failed to perform even the most rudimentary tasks—in the case of Ms. Christian, failing to promptly serve her husband; in the case of the Proctors, failing to inform them of the correct time and location of a scheduled mediation; and in the case of Mr. Lawrence, failing to respond to his inquiries concerning fees. *See Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 340, 68 A.3d 862 (2013) (finding a pattern of misconduct where an attorney neglected four clients); *Attorney Grievance Comm'n v. Dominguez*, 427 Md. 308, 326, 47 A.3d 975 (2012) (finding a pattern of misconduct where an attorney neglected at least five clients).

Lastly, Mr. Harmon has been the subject of a prior disciplinary action. At the time of the oral argument in this case, Mr. Harmon had already been indefinitely suspended with the right to apply for reinstatement no sooner than six months. *Attorney Grievance Comm'n v. Harmon*, 433 Md. 612, 72 A.3d 555 (2013). It is particularly disturbing that the two cases involve a common violation—the failure to respond to Bar Counsel's lawful demands for information. In fact, at the oral argument in that prior action, held on November 8, 2011, this Court demanded an explanation for Mr. Harmon's failure to respond to Bar Counsel's requests and he admitted that his response was "not perfect." Even after that argument, however, Mr. Harmon remained unresponsive to Bar Counsel's requests for information in the present case. He continued to withhold his records of payments from Ms. Christian and Mr. Lawrence or, if he simply did not possess the records, failed to inform Bar Counsel that he did not possess them.

Mr. Harmon's conduct demonstrates a disregard for the importance of attorney cooperation with disciplinary authorities. This Court has stated that "[t]he practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession." *Fezell,* 361 Md. at 255, 760 A.2d 1108. Accordingly, indefinite suspension is the proper sanction when an attorney has violated various provisions of the MLRPC coupled with a violation of MLRPC 8.1. *See Attorney Grievance Comm'n v. Pawlak,* 408 Md. 288, 304, 969 A.2d 311 (2009) (attorney who violated MLRPC 1.3, 8.1(a), 8.4(a) and (d) was given an indefinite suspension even though there were mitigating circumstances, including the fact that he had never been accused of any misconduct during his prior 38 years of practice); *Attorney Grievance Comm'n v. Rose,* 391 Md. 101, 111–13, 892 A.2d 469 (2006) (attorney who violated MLRPC 1.1, 1.2, 1.3, 3.2, 1.4(a), 1.15(a), 1.15(b), 1.16(d), 8.1(b) and 8.4(d) was given indefinite suspension even though the hearing judge found that mitigating circumstances existed because the attorney suffered from "debilitating psychiatric disorder" and "depression"); *Attorney Grievance Comm'n v. Kovacic,* 389 Md. 233, 240, 884 A.2d 673 (2005) (attorney who violated MLRPC 1.3, 1.4 and 8.1(b) was given indefinite suspension).

*Kovacic,* in particular, informs our analysis. In *Kovacic,* the respondent was found in violation of MLRPC 1.3, 1.4 and 8.1(b) for failing to act diligently in arranging for an appraisal of marital property and preparing a Qualified Domestic Relations Order, failing to send a copy of the judgment of divorce to her client until over a month after it was entered, and failing to timely respond to Bar Counsel's numerous phone calls and letters requesting her response to a complaint. *Kovacic,* 389 Md. at 235–36, 884 A.2d 673. Despite the respondent's claim that she was suffering from a medical condition that caused her to stop practicing law, this Court did not find any mitigating factors, pointing out that she had failed to submit documentation to confirm its existence even though

she had agreed to do so. *Id.* at 240, 884 A.2d 673. This Court ordered that she be suspended indefinitely. *Id.*

The circumstances surrounding Mr. Harmon's case are similarly serious. Not only are mitigating circumstances absent, but there are aggravating circumstances, including prior disciplinary violations. Although Mr. Harmon has experienced some struggles in his personal life, the primary concern in this context is the protection of the public, which compels us to impose an indefinite suspension.

It is so Ordered: Respondent shall pay all costs as taxed by the Clerk of this Court, including costs of all transcripts, pursuant to Maryland Rule 16–761. Judgment is entered in favor of the Attorney Grievance Commission against Anthony Maurice Harmon in the sum of these costs.